IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN A. HUTTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:14-CV-00310 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, John A. Hutton ("Hutton"), challenges the Social Security Commissioner's ("Commissioner") decision denying his application for supplemental security income ("SSI") benefits under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Hutton alleges that the Administrative Law Judge ("ALJ") erred by improperly evaluating and weighing the consultative examiners' opinions and that the case should be remanded to the Commissioner to consider additional evidence submitted to the Appeals Council. I agree that the ALJ did not provide a sufficient explanation for the weight given to the consultative examiners' opinions. As such, I **RECOMMEND GRANTING in part** Hutton's Motion for Summary Judgment (Dkt. No. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), and reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

1

the Commissioner's conclusion that Hutton failed to demonstrate that he was disabled.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hutton protectively filed for SSI on December 17, 2010, claiming that his disability began on January 10, 2010.  R. 193-201.  The Commissioner denied his application at the initial and reconsideration levels of administrative review.  R. 72-87, 88-102.  On February 14, 2013, ALJ Benjamin R. McMillion held a hearing to consider Hutton's disability claim.  R. 39-71.  Hutton was represented by an attorney at the hearing, which included testimony from Hutton and vocational expert Ashley Wells.  Id.

On March 27, 2013, the ALJ entered his decision analyzing Hutton's claim under the familiar five-step process[2] and denying Hutton's claim for benefits.  R. 19-38.  The ALJ found

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age,

2

that Hutton suffered from the severe impairments of chronic back pain, recurrent headaches, mild chronic obstructive pulmonary disease, mild degenerative joint disease both feet, bipolar disorder, anxiety disorder, intermittent explosive disorder, borderline intellectual functioning, personality disorder, low reading and writing ability, and cannabis dependence. R. 24. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 24-26. The ALJ decided that Hutton retained the RFC to perform medium work,[3] except:

> he can occasionally climb, kneel, and crawl. He has no restrictions regarding stooping or crouching. He should avoid fumes. He is limited to reading at level I. He is limited to no more than 1-2 job instructions. He is limited to no more than occasional contact with the general public.

R. 26. The ALJ determined that Hutton could return to his past relevant work as a milker, and that Hutton also could work at jobs that exist in significant numbers in the national economy such as a textile manufacturing laborer/production worker, machine feeder/dryer attendant, and packager. R. 32-34. Thus, the ALJ concluded that he was not disabled. R. 34. On April 25, 2014, the Appeals Council denied Hutton's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Hutton does not challenge the conclusion that he can engage in medium work with certain limitations. Rather, Hutton asserts that the ALJ and Appeals Council improperly reviewed his mental health evidence as it relates to his ability to interact with other people. Hutton first contends that the ALJ inaccurately evaluated and weighed the opinions of licensed

---

education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

clinical psychologists Angelia Berry, Psy.D. and Pamela S. Tessnear, Ph.D., both of whom performed consultative examinations. Hutton also asserts that the additional evidence from Dr. Tessnear and vocational expert John Newman submitted to the Appeals Council warrant remand. I find that the ALJ inadequately explained the basis for the weight assigned to the opinions of the consultative examiners, and thus, I cannot determine whether substantial evidence supports the ALJ's decision.

## Opinions of Consultative Examiners

The ALJ assigned "great weight" to the consultative opinion of the functional limitations and abilities determined by Dr. Berry, but only "little weight" to the opinions of Dr. Tessnear. Hutton's primary issue on appeal is that the ALJ improperly discounted Dr. Tessnear's assessment of Hutton's ability to interact with other people, specifically coworkers and supervisors. Hutton argues that the opinions from both consultative examinations were relatively similar–except for how they described Hutton's ability to interact with other people; thus, the opinions of Dr. Tessnear should have received the same consideration to that of Dr. Berry.

Dr. Berry examined Hutton on March 28, 2011 and diagnosed him with bipolar disorder, anxiety disorder, cannabis dependence, intermittent explosive disorder, borderline intellectual functioning, and personality disorder. R. 343-49. She further described that she could not rule out that Hutton had schizoaffective and learning disorders. Id. Dr. Berry found that at the time of the examination Hutton had a Global Assessment of Functioning ("GAF") score of 58 and a number of functional limitations. Specifically, Dr. Berry noted "Mr. Hutton is likely to experience significant deficits interacting appropriately with others due to symptoms of anger and anxiety…. [h]is ability to cope effectively with daily stressors is likely to be mildly impaired, with levels [of] impairment in all areas increasing during manic episodes." R. 348. The ALJ accorded Dr. Berry's report "great weight" because her opinion was "consistent with

4

the evidence of record as a whole in describing the claimant's long-term conditions, treatment history, and limitations." R. 32.

Dr. Tessnear examined Hutton two years later on March 12, 2013 at the request of his attorney. R. 466-75. Dr. Tessnear diagnosed Hutton with mood disorder, anxiety disorder, personality disorder, and a history of polysubstance abuse. R. 474. Hutton had a GAF score of 50 at the time of the examination and functional limitations quite similar to those of Dr. Berry. R. 474-75. Regarding Hutton's ability to interact with other people, Dr. Tessnear wrote,

> [h]e has very poor control of angry impulses and could not work
> with the public. Relations with co-workers and supervisors are
> likely to be strained. Because of anxiety, he is avoidant and would
> do best to have very limited interaction with other people. He is
> not reliable and may do well initially but then not follow through
> or have conflicts that result in his leaving.

R. 475. The ALJ only gave Dr. Tessnear's conclusions and GAF assessment "little weight," citing them as inconsistent with her own clinical findings. R. 31-32. Specifically, the ALJ highlighted Hutton's ability to complete intake forms without assistance, his intact memory, his logical stream of thought, and his daily activities. R. 32. The ALJ also contends that her conclusions "fail[] to correlate functionally with other clinical findings in the record." R. 32.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. 20 CFR §404.1527(c). Under 20 CFR §§ 404.1527(c)(1) and 404.1527(c)(2), the opinion of a consultative examining source receives greater weight than a non-examining source. Similarly, the opinion of a treating source receives greater weight than that of a consultative examining source. Medical specialists who have examined a claimant generally are accorded more weight than a general medical examiner as well. See Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sept. 4, 2014). In evaluating the weight to give the opinion of a consulting examiner, the ALJ must consider various factors, including the explanation and

5

support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96–8p, 1996 WL 374184, *7 (July 2, 1996)).[4] The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Dr. Berry's opinion, which was accorded great weight, appears similar both in observation and functional limitations to Dr. Tessnear's opinion accorded little weight. Drs. Berry and Tessnear diagnosed Hutton with anxiety disorder and personality disorder, along with each finding a slew of other mental disorders. R. 348, 474. Both Drs. Berry and Tessnear noted multiple psychiatric hospitalizations,[5] past substance abuse, and difficult work relationships due to Hutton's excessive anger. R. 344-45, 467-70. The examinations both led to the determination of a low average IQ range. R. 347, 473. Dr. Berry concluded Hutton's self-reports were credible. Dr. Tessnear noted Hutton's reports generally were consistent with his treatment records, but found his personality assessment invalid because of exaggerated complaints and poor compliance with some of his treatment. R. 347, 474. The observations of both doctors appear similar; Dr. Tessnear's examination may have been broader in scope to include more detail about Hutton's relationships with coworkers and supervisors, the difficulty he has had getting along with others, and the impact this has had in his work relationships.

---

[4] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

[5] Dr. Berry said she did not have the benefit of Hutton's psychiatric hospitalization records, and that the records may suggest schizoaffective disorder. R. 347. Dr. Tessnear did not appear to review the records either, but discussed the hospitalizations in depth with Hutton. R. 467.

6

R. 469-71.

The functional assessments of both doctors also were comparable. Dr. Berry recommended limiting Hutton's work to simple directions and simple work-related decisions, noted "significant deficits interacting appropriately with others due to symptoms of anger and anxiety" and a mild impairment in his ability to cope with daily stressors, and articulated concern that all of the impairments could worsen during manic episodes. R. 348. Dr. Tessnear recommended limiting Hutton's work to simple instructions for periods of two hours, but further expressed caution about his poor judgment, lack of reliability, and "poor control of angry impulses" that prevents him from working with the public and strains relationships with coworkers. R. 475. Both doctors' recommended functional limitations are alike, with the exception that Dr. Tessnear separately addresses Hutton's interactions with the public and coworkers and suggests possibly more severe limitations. Although Dr. Berry discussed Hutton's interactions with others more generally, the court cannot discern why her discussion should be taken as only addressing the general public and not include coworkers and supervisors.

The ALJ stated he gave Dr. Tessnear's opinion little weight because it was inconsistent with her own clinical findings, highlighting Hutton's ability to complete intake forms without assistance, his intact memory, his logical stream of thought, and daily activities. R. 32. However, these same findings were made in Dr. Berry's examination that was accorded great weight. R. 343 ("Mr. Hutton was unaccompanied to the appointment and completed intake paperwork independently."), 346 ("Short and long-term memory was grossly intact."), 346 ("Thought content was logical and coherent."). Drs. Berry and Tessnear generally reviewed the same self-reported daily activities as well. Compare R. 346, with R. 470-71 (discussing child care, music, house chores, and financial abilities). The only other reason the ALJ gave supporting Dr. Tessnear's assignment of little weight was that her conclusions "fail[ed] to

7

correlate functionally with other clinical findings in the record." R. 32. Given the court's review of the other medical opinions and treatment notes in the administrative record, substantial evidence does not support the ALJ's explanation that Dr. Tessnear's entire opinion is not supported by the record.

The record contains only two mental health records during the relevant period. On January 31, 2013, Hutton reported to Mount Rogers where he was diagnosed with mood disorder, personality disorder, cannabis abuse in remission, cocaine abuse in remission, and opioid abuse in remission. R. 462-64. He received treatment for outbursts of anger, severe anxiety around crowds of people, and interpersonal difficulties. R. 463. On February 28, 2013, Hutton did not attend his appointment at Mount Rogers (R. 465), which the ALJ interpreted as "suggest[ing] the claimant was doing fine." R. 29.

The ALJ did not address any of the evidence in the record before the relevant period of Hutton's mental health treatment. A review of that evidence shows that Hutton was hospitalized at the Southwestern Virginia Mental Health Institute ("Southwestern") in December 2005 and January 2006. R. 297-341. Suicidal ideations led to Hutton's hospitalization from December 19 through 22, 2005. R. 307. He was diagnosed at that time with major depression, benzodiazepine dependence, and cannabis abuse, and received GAF scores ranging from 30 to 50. R. 299-329. The record noted prior hospitalizations both at Southwestern and Saint Albans Hospital. R. 307, 325. On January 3, 2006, Hutton was hospitalized at Southwestern under to a Temporary Detention Order. He was diagnosed with adjustment disorder with depressed mood and a personality disorder. R. 330-39. Hutton explained during this hospitalization "that he often impulsively thinks of killing himself when he gets angry." R. 337. Hutton was discharged the next day after the magistrate dismissed the detention order and the staff found no evidence of depression. R. 337.

8

The state agency psychologists' who reviewed Hutton's mental health records recommended limitations similar to both Dr. Berry's and Dr. Tessnear's opinions. On April 19, 2011, Linda Dougherty, Ph.D. determined Hutton faced marked limitations in his ability to work in coordination with or in proximity to others without being distracted by them. R. 82. Dr. Dougherty explained that "Claimant has a long history of being unable to get along with others, reportedly, as a result of excessive anger." R. 83. She further found that Hutton had moderate limitations in his ability (1) to interact appropriately with the general public, (2) to accept instructions and respond appropriately to criticism from supervisors, and (3) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 83.

In a report dated September 14, 2011, state agency psychologist Stephanie Fearer, Ph.D. assessed Hutton as having moderate limitations (1) working in coordination or proximity to others without being distracted by them, (2) interacting appropriately with the general public, (3) accepting instructions and responding appropriately to criticism from supervisors, and (4) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 98-99. Dr. Fearer explained that "Claimant has a long history of being unable to get along with others, reportedly as a result of excessive anger. CE examiner notes cl[aimant] is likely to experience significant deficits interacting appropriately with others due to symptoms of anger and anxiety." R. 99. Dr. Fearer summarized at the end of her opinion that "while his impairments cause moderate limitations in his ability to remember and carry out detailed instructions, maintain sustained concentration for extended periods, interact well with others, and adapt to the workplace, he is capable of performing simple routine work in an environment requiring limited contact with the public." R. 100. Although the state agency psychologists' recommend limitations and comments run parallel to those of Dr. Tessnear, the ALJ accorded their opinions great weight–compared to Dr. Tessnear's little weight–because their opinions were

9

consistent with the record describing Hutton's long-term conditions, treatment history, and limitations. R. 32.

The crux of the problem in this case is the limited to nonexistent reasoning from the ALJ as to why he assigned such limited weight to the opinions of Dr. Tessnear despite assigning great weight to similar medical opinions. Dr. Tessnear, Dr. Berry, and the two state agency psychologists reached similar conclusions regarding Hutton's impairments and determined that he faced significant limitations in his interactions with others. All four medical opinions addressed Hutton's challenges managing relationships in the workplace. The ALJ appears to have discounted the state agency psychologists' findings of Hutton's moderate limitations interacting with supervisors and coworkers, and assumed without any basis that Dr. Berry's finding of Hutton's "significant deficits interacting appropriately with others" did not include coworkers or supervisors. Given that every medical opinion mentioned Hutton's challenges with workplace relationships, the ALJ needed to offer an explanation to justify his exclusion of this limitation in general, and particularly in Dr. Tessnear's opinion.

The Commissioner invites the court to infer that Dr. Berry's opinion that Hutton experiences "significant deficits interacting appropriately with others" equates to occasional interaction with the general public; such an inference does not permit the court to review why Dr. Tessnear's opinion was not accepted on the whole and does not appear to have any support in Dr. Berry's opinion. Although the court reviews the ALJ's decision under the substantial evidence standard, the ALJ still must provide a sufficient explanation of the conclusions reached to allow the court to conduct a meaningful review on appeal. Substantial evidence does not support the ALJ's finding that Dr. Tessnear's conclusions did not align with other clinical findings, particularly where Dr. Berry, the state agency psychologists, and the treatment record note that Hutton has limitations dealing with supervisors and coworkers. If the ALJ disagrees

10

with Dr. Tessnear's particular conclusion about Hutton's ability to work with the general public, supervisors, or coworkers, then he must provide an explanation that allows meaningful review.

The court cannot determine why the ALJ chose not to include a limitation about interacting with coworkers and supervisors in Hutton's RFC. Dr. Fearer found that Hutton should have limited interaction with the public. Both Dr. Fearer and Dr. Dougherty found that Hutton had moderate limitations in his interactions with coworkers and supervisors. Dr. Berry concluded that Hutton "experience[d] significant deficits interacting appropriately with others." The ALJ simply provided no explanation why, despite several opinions explaining Hutton's difficulty interacting with supervisors and coworkers, the RFC provided no corresponding limitation. The ALJ's explanation for discounting Dr. Tessnear's opinion, and how the medical opinions influenced the RFC, does not allow for meaningful review and thus requires remand.[6]

## Additional Evidence

Hutton contends that his claim should be remanded for further administrative consideration based upon additional evidence submitted to the Appeals Council. Hutton provided the March 23, 2013 addendum from Dr. Tessnear clarifying her opinion and the September 9, 2013 questionnaire from vocational expert John Newman that concludes Hutton is precluded from employment. R. 296, 481-82. The Appeals Council accepted the additional evidence and considered it with the rest of the record, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 2. I find that this evidence does not warrant remand.

---

[6] At the hearing held on July 9, 2015, Hutton advanced new arguments relating to the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Hutton argued that the ALJ did not account for his moderate difficulties in daily living, social functioning, and maintaining concentration, persistence, or pace. Hutton also noted the ALJ's use of boilerplate language in his credibility assessment. Upon remand, the ALJ should consider the requirements set forth in Mascio when determining Hutton's RFC.

11

Dr. Tessnear completed the addendum based on her March 12, 2013 consultative examination of Hutton. R. 481. She dated the addendum on March 23, 2013, only days prior to the ALJ's decision. Dr. Tessnear determined that Hutton experienced moderate limitations in his ability to get along with coworkers and peers, marked limitations in his ability to interact appropriately with the general public, and marked limitations in his ability to respond appropriately to criticism from supervisors. R. 481. Dr. Tessnear further determined that Hutton faced marked limitations in making decisions and using good judgment without special supervision, and moderate limitations in performing activities within a schedule, maintaining regular attendance, and being punctual. R. 481. She related these limitations to the date of Hutton's application for SSI benefits. R. 481.

Mr. Newcomb completed his opinion as a vocational expert on September 9, 2013. The opinion consisted of a checkbox question asking whether Hutton could work based on Dr. Tessnear's March 12, 2013 evaluation and March 23, 2013 supplemental addendum. R. 296. Mr. Newcomb determined Hutton could not work, and offered the following explanation: "According to Dr. Tessnear, Mr. Hutton's inability to respond appropriately to supervision and his inability to make judgments incommensurate with unskilled work will either separately or collectively preclude competitive employment." R. 296.

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Meyer v. Astrue, 662 F.3d 700, 704–05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). The Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision." Id. (citing 20 C.F.R. § 416.1470(b)). The Appeals Council does not require

12

good cause to admit previously existing records.  Id.  Upon the Appeals Council's denial of Hutton's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.  The Appeals Council does not have to provide express, specific findings on the record regarding a claimant's additional evidence.  As the Fourth Circuit clarified in Meyer, "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Meyer, 662 F.3d at 705; see also Hollar v. Comm'r Of Soc. Sec. Admin., 194 F.3d 1304, at *1 (4th Cir. 1999) (noting that the "regulation addressing additional evidence does not direct the Appeals Council to announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision").

This Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings."  Wilkins, 953 F.2d at 96.  "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)).  Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record–including the new evidence–to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts.  See Davis, 392 F. Supp. 2d at 751.  If the new evidence creates a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence.  If such conflicts are not present, the case can be decided on the existing record without a remand.  See id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103,

13

at *4 (4th Cir. 2001) (unpublished opinion). Upon review of records that were before the ALJ and were submitted to the Appeals Council, courts must determine whether substantial evidence supports the ALJ's decision and whether the submitted evidence may change his finding. See Hollar, 194 F.3d at *2 (citing Browning v. Sullivan, 958 F.2d 817, 822-23 (8th Cir. 1992).

In this case, the Appeals Council's consideration of the additional evidence and denial of further review met its obligations under the agency's regulations. Hutton has the burden of demonstrating that a remand is appropriate given any new and material evidence. Sunderland v. Colvin, 5:12CV00020, 2013 WL 4501418, at *8–9 (W.D. Va. Aug. 22, 2013) (citing Meadows v. Astrue, 5:08-CV-01129, 2010 WL 1380117, at *3 (S.D.W. Va. Mar. 31, 2010)). Remand is appropriate when a fact finder has not made any findings on competing evidence submitted to the Appeals Council, and thus the reviewing court cannot determine whether substantial evidence supports the ALJ's denial of benefits. See Meyer, 662 F.3d at 707. Hutton has not shown that remand is appropriate on the basis of documents submitted to the Appeals Council.

Dr. Tessnear's and Mr. Newcomb's opinions are not material and thus would not have changed the ALJ's decision. The ALJ gave Dr. Tessnear's opinion little weight; although this court finds that the ALJ should have provided a more thorough explanation as to why he disregarded her opinion, Dr. Tessnear's addendum does not add information unavailable in her prior reviewed opinion or speak to the reasons for why the ALJ discredited her opinion. Dr. Tessnear's addendum is only a checkbox questionnaire based on her report submitted to the ALJ. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")). Moreover, her checkmarks assessing marked or moderate

14

limitations do not offer new insight into Hutton's functional limitations or address how her assessment correlated with the other clinical findings in the record. Mr. Newcomb's vocational opinion based on a medical opinion given little weight by the ALJ, and which he fully accepted without reviewing other expert opinions, would not have changed the ALJ's decision.

Even if Dr. Tessnear's and Mr. Newcomb's opinions offered new material information, courts are reticent to remand on the basis of clarifying opinions submitted to the Appeals Council. See Blackwell v. Colvin, No. 1:14-CV-00085-MOC, 2014 WL 7339132, at *3-4 (W.D.N.C. Dec. 23, 2014) ("While this court's role is not to weigh the evidence on review, it does have an obligation to determine whether such evidence could conceivably fill an evidentiary gap as plaintiff suggests. Such later opinion could not fill an evidentiary gap as it is not supported by Dr. Armstrong's own relevant clinical findings or notes."); see also Austin v. Astrue, No. CA 0:11-2768-DCN-PJG, 2013 WL 1182230, at *3-4 (D.S.C. Jan. 23, 2013) report and recommendation adopted sub nom. Austin v. Colvin, No. 0:11-CV-02768-DCN, 2013 WL 1181952 (D.S.C. Mar. 21, 2013). The Appeals Council clearly considered both Dr. Tessnear's medical opinion and Mr. Newcomb's vocational opinion, and its review did not find such material information as to warrant a change in the ALJ's decision. See Lemken v. Astrue, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *9 (W.D.N.C. July 26, 2010) report and recommendation adopted, No. 5:07CV33-RLV, 2010 WL 5057127 (W.D.N.C. Dec. 6, 2010). The filing of an addendum to more clearly state the doctor's recommended limitations, when the ALJ already dismissed her opinion, does not persuade the court there is now contrary evidence requiring remand.

The records submitted to the Appeals Council contribute no new evidentiary value to the record. As such, the evidence is not material and remand is not warranted on this basis alone.

15

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **REVERSING** and **REMANDING** the final decision of the Commissioner, **DENYING** summary judgment to the defendant, **GRANTING in part** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 6, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge